**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-186 (TJK)** |
| | : | |
| **RALPH JOSEPH CELENTANO III,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE**

The United States respectfully responds to Defendant Celentano's motion to preclude evidence. (ECF 51.) In essence, Celentano asks that the Court prevent the government from introducing evidence that accurately establishes the defendant's crimes and the conduct of himself and others; therefore, this Court, as others have done, should deny the motion.

Defendant incorrectly asserts that the evidence the government seeks to admit is barred pursuant to Fed.R.Crim.Evid. 401, 402, and 403. The facts and charges, which are set forth in the government's response to Celentano's first motion to preclude (ECF 39), provide important context to the evidence. Specifically, Celentano is charged in Count Seven with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2. To prove this charge, the government must show Celentano acted to obstruct Congress from certifying the electoral votes for president in the 2020 election. Celentano seeks to preclude the government from presenting evidence that tends to make a fact more or less probable than it would be without the evidence, FRE 401(a), and it is not substantially outweighed by the danger of unfair prejudice, FRE 403.

*Text messages post January 6*

The text messages the government seeks to introduce go directly to Celentano's state of mind, consciousness of guilt, and intent. Courts routinely permit the admission of communications

and social media posts defendants make after January 6.[1]

*Text Messages Rule of Completeness*

Celentano is in possession of the text messages taken from his phone, pursuant to the limitation of the search warrant.  If he believes the government's exhibits are incomplete or taken out of context, he is free to introduce them into evidence, assuming they are admissible under the Federal Rules of Evidence.  In addition, depending on what the defendant seeks to introduce, the government may have no objection to additional messages included pursuant to the rule of completeness. However, to the extent Celentano attempts to introduce an answer or response to a separate question later in a text thread, the Government would object to self-serving hearsay and beyond the scope of the Rule of Completeness. *See United States v. Griffith,* No. 21-cr-244-2 (CKK), 2023 WL 2043223, at *5 (D.D.C. Feb. 12, 2023) (quoting *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986 and Fed. R. Evid. 106) ("Defendant concedes that statements offered against him are admissible as statements by a party opponent. To the extent Defendant argues that certain statements should be played in their entirety for completeness, such an argument goes only so far. Rule 106 directs the Court to 'permit such limited portions [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence.' This rule is only 'invoked rarely and for a limited purpose.').

Celentano argues that the government has selectively chosen messages that misrepresent the context and tone of the conversation.  (ECF 51 at pgs. 5-6).  What Celentano contends is the same text message conversation, the government contends (1) is not the same conversation,

---

[1] *United States v. Herrera*, 21-cr-619 (BAH); defendant Herrera's post January 6 direct messages on Instagram were admitted at trial. *United States v. Badalian*, 21-cr-246 (ABJ), the defendant's post January 6 Telegram messages were admitted at trial. *See also, United States v. Riley Williams*, 21-cr-618 (ABJ); *Richard Barnett*, 21-cr-38 (CRC); and *Kirstyn Niemela*, 21-cr-25 (APM), where pre-Jan 6, contemporaneous to Jan 6, and post-Jan 6 social media posts were admitted at trial.

2

because the text that supposedly "completes the conversation" is over thirty minutes later, and the parties have an intervening conversation regarding a medical appointment, and (2) the additional text Celentano references is self-serving hearsay. The Government should not be forced to introduce the defendant's otherwise inadmissible statements under the guise of Rule 106.

*Text Messages Prior Bad Acts*

For the text message referencing "gardens" in a conversation with "CF," Celentano objects to its introduction under Rule 404. To address Celentano's concern regarding improper character evidence, the Government would not oppose a redaction for the words "the gardens" to the extent the statement is introduced by either party.

For the text message Celentano sent in a conversation with "CF," Celentano objects to the introduction of the statement, "Frank you always wonder do I have it the way we used to the fight in bars" as improper character evidence. However, the statement does not constitute evidence of *prior* bad acts as Celentano is describing his conduct *on January 6th* for which he is currently charged – Assault on a Federal Officer in Count One. The statement goes to Celentano's intent, ability, and recognition/knowledge of his own violent actions on January 6th. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). The statement is not being introduced to demonstrate that the defendant's acts conformed with his character. *See United States v. Crowder,* 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) (noting that although Rule 404(b) is framed restrictively, the rule itself is quite permissive and only prohibits admission of other crimes evidence when the sole purpose is to prove that the person's actions conformed with his character); *see also United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as *190 the evidence is not offered solely to prove character.").

*Text Messages Listed Contact Moniker in Celentano's Phone*

Celentano suggests that one of his friends that he texts with goes by the moniker "Kenny One Punch Pena" and Celentano's text exchanges insinuate that this person is a violent individual. The government did not choose the moniker, nor did it choose for the two of them to exchange texts. The probative value of this evidence far outweighs any prejudice that Celentano may suffer because the evidence is highly relevant. However, in the spirit of fairness, if Celentano wants the name "one punch" redacted, the government is amenable to that.

*Social Media Posts*

Celentano does not want several of his social media posts presented to the jury. Celentano posted on the platform Parler before, during, and after January 6. These posts demonstrate Celentano's state of mind, consciousness of guilt, and intent. Therefore, they are relevant for the jury's consideration. This Court has allowed post-January 6 posts in prior trials.[2]

*Political Speech*

Celentano's texts and social media posts are not protected as "political speech" as they show his state of mind, knowledge, and intent. This is not an issue of first impression. In *United States v. Thomas*, 21-cr-552 (DLF), the defense sought to exclude Facebook posts made both before and after January 6 as "political speech." Judge Friedrich held time and again that the Facebook posts and comments were relevant to defendant's intent and motive regarding the charge of violating 18 U.S.C. § 1512.[3]

---

[2] This Court allowed dozens of messages to be used in the "Proud Boys" trial, *United States v. Nordean, et al,* 21-cr-175 (TJK) and post-Jan 6 posts were admitted in *United States v. Jensen*, 21-cr-06 (TJK).

[3] For example, *see* Docket Text of May 20, 2023, "For all the reasons stated from the bench on May 19, 2023, the defendant's [136] Motion for Mistrial on First Amendment Grounds is DENIED.

(continued...)

The crucial distinction between the Defendant's statements and protected First Amendment speech is that the Defendant is being prosecuted for the violent and obstructive conduct that he took in furtherance of that speech, not for the speech itself. *United States v. Chansley*, 525 F. Supp 3d 151, 164 (D.D.C. 2021) (Lamberth, J.) ("[E]ven if [defendant's statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent.")

The statements that the Celentano made about his beliefs surrounding the 2020 Presidential Election and the certification thereof are admissible intent evidence. It is uncontroversial that a defendant's statements, which would otherwise be protected under the First Amendment, may be introduced in a criminal case when those statements are evidence of the intent behind a defendant's acts. *See Wisconsin v. Mitchell*, 508 U.S. 476 (1993). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trial subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*. at 489. Courts across the country have followed the mandate in *Mitchell* and admitted evidence for this purpose. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (admitting musical lyrics composed by a defendant in a Hobbs Act prosecution); *United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ("The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise[.]" (internal citations omitted); *United States v. Salameh*, 152 F.3d 188, 111-112 (2d Cir. 1998) (the defendants were not "prosecuted for possessing or reading terrorist materials. The materials seized […] were used appropriately to

---

As the Court stated repeatedly, the government is permitted to introduce protected speech "to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

prove the existence of the bombing conspiracy and its motive."). This same principle has been upheld and applied in the context of cases arising from the Capitol Riot. *Chansley*, 525 F. Supp 3d at 164; *United States v. Robertson*, 2022 WL 969546 at *6 (D.D.C. 2022) (Cooper, J.) ("If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.").

Defendant Celentano is not being prosecuted *for* his speech. Instead, his speech is relevant and highly probative evidence of the corrupt intent behind his actions. *Id.* Among the charges are multiple counts which require the government to prove his intent beyond a reasonable doubt. The First Amendment thus does not bar the admission of any evidence which the government offers to establish Celentano's motive, intent, or an element of the crime, including that his actions that day were intended to stop the certification of the Electoral College vote.  *Mitchell*, 508 U.S. at 489. The Court should therefore find that the government may introduce these statements as probative of Defendant's intent. *Id*.

The First Amendment to the United States Constitution protects many sacred rights, but the right to engage in violence is not among them. *Grayned v. City of Rockford*, 408 U.S. 104, 116 ("Of course, where demonstrations turn violent, they lose their protected quality as expression under the First Amendment."). "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267-268 (3d Cir. 2000). Even conduct which is not outright violent but which physically "obstructs or unreasonably interferes" with official functions of government business loses its First Amendment protection. *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (finding that

6

a picket demonstration which physically blocked ingress or egress from a courthouse was not protected by the First Amendment); *see also Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (physical "cordon" of a street or a public or private building by demonstrators who refused to let anyone pass if they "did not agree to listen to their exhortations."). Importantly, that some aspect of a Defendant's conduct was protected by the First Amendment does not negate criminal action for his unprotected conduct because "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). That is to say that even if a defendant is engaged in speech that is protected, when his actions turn physically obstructive or outright violent, the First Amendment ceases to protect the speech itself because the government has a legitimate interest in preventing or stopping violent conduct. *Id.*; *see also Grayned*, 408 U.S. at 116. These First Amendment principles have been applied and upheld with respect to the January 6 Capitol Riot. *See*, *e.g.*, *United States v. Nordean et al.*, 579 F.Supp.3d 28, 53-55 (D.D.C. 2021) (Kelly, J.) (finding that charges for violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1512(c)(2) withstood constitutional scrutiny).

Celentano's conduct on January 6 was plainly not protected by the First Amendment. *Id.* On January 6, 2021, Defendant joined a riotous mob that had descended upon the Capitol, completely obstructing the flow of people, including the Vice President of the United States and other lawmakers inside, from ingress or egress from the building without the consent of the mob. *Cox*, 379 U.S. at 555; *Johnson*, 390 U.S. at 617. His actions, as one among many in the mob, had the effect of impeding and obstructing official government business, that being the certification of the Electoral College vote, for hours. *Id.* While on the West Front, Celentano assaulted law

enforcement officers.  *Grayned*, 408 U.S. at 116; *Gregg*, 226 F.3d at 267-268.

*Exhibit 1006*

Exhibit 1006 is relevant because it is the same picture Celentano selected as his Parler profile picture.  This is evidence of identity and shows Celentano is the person who made and endorsed the posts on his Paler account.

*Compilation Video*

The compilation video, (Exhibit 901) is a six-minute and twelve-second video comprised of United States Capitol Police (USCP) radio runs, Google Earth images, and USCP CCTV, with date and time stamps.  This video, or some version of it (many lengthier) has been admitted in all, or virtually all, January 6 trials.[4]  Motions to preclude made by other defendants similar to Celentano's motion have been denied.[5]

Although the defendant is only one participant in the events at the Capitol on January 6, evidence of the broader context of the events of the day is both relevant to, and probative of, the alleged offenses.  Evidence about the official proceeding, and its disruption, as well of the actions of Capitol Police with respect to the rioters, is relevant to the charges in two respects.  First the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The compilation exhibits

---

[4] *United States v. Gillespie*, 22-cr-60 (BAH); *United States v. Herrera*, 21-cr-619 (BAH); *United States v. St Cyr*, 22-cr-185 (JDB); *United States v. Jensen,* 21-cr-006 (TJK); *United States v. Vargas*, 21-cr-047 (RDM); *United States v. Ramey*, 22-cr-184 (DLF); *United States v. Worrell*, 21-cr-292 (RCL); *United States v. Fitzsimons*, 21-cr-158 (RC); *United States v. Barnett*, 21-cr-38(CRC); *United States v. Niemela*, 21-cr-623(CRC); and *United States v, Kell*y, 21-cr-708 (RCL).

[5] *See United States v. Gillespie*, 22-cr-60 (BAH) at ECF 43; *see also United States v. Bingert, et. al,* 21-cr-91 (RCL) Minute Entry May 15, 2023, denying Defendant's Motion In Limine (ECF 132).

establish how and when the disruption occurred. Second, the government must prove the defendant knowingly engaged in certain conduct in a restricted area. The compilation establishes that element by showing law enforcement efforts, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area. The probative value of the compilation is higher in a case such as this when the defendant participated in disorderly and disruptive acts within the restricted grounds of the Capitol. Third, Celentano is charged with committing several crimes, including Civil Disorder in Count Two under 18 U.S.C. § 231(a)(3), and the compilation video is relevant evidence of a civil disorder.  Lastly, the video is also relevant evidence of the actions of other individuals on January 6th with respect to the "official proceeding" that the defendant is charged with obstructing, attempting to obstruct, and aiding and abetting in Count Seven under 18 U.S.C. §§ 1512(c)(2), 2.

For the reasons set forth in the reasons set forth herein, the government urges the Court to deny Defendant Celentano's motion in its' entirety.

FOR THE UNITED STATES

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

_____/s/_____
JACQUELINE SCHESNOL
Assistant United States Attorney
Arizona Bar No. 016742
Capitol Riot Detailee
jacqueline.schesnol@usdoj.gov
(602) 514-7500

_____/s/_____
SHALIN NOHRIA
Assistant United States Attorney
D.C. Bar No. 1644392
shalin.nohria@usdoj.gov
202-344-5763

9