UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RALPH JOSEPH CELENTANO, III<br><br>Defendant. | Case No. 22-cr-186-TJK |

### GOVERNMENT'S SUPPLEMENT TO SENTENCING MEMORANDUM

The United States respectfully submits this memorandum to address three topics raised at the sentencing hearing on December 1, 2023: (1) whether U.S.S.G. § 2A2.2, the aggravated assault guideline, applies in this case; (2) whether this Court must consider relevant conduct in calculating the Guidelines range; and (3) the government's alternative grouping analysis in this case. The United States incorporates all facts and arguments in its first Sentencing Memorandum, ECF 87. If the Court requests additional briefing on any other objections raised by defendant Celentano, the government will respond in a subsequent supplement.

### I.   U.S.S.G. § 2A2.2 Aggravated Assault[1] is the Appropriate Cross Reference for Counts One, Two, Four, and Five.[2]

A three-step analysis demonstrates that the cross-reference in U.S.S.G. § 2A2.4(c) applies to Counts One, Two, Four, and Five. First, the conduct underlying each of those counts was an assault. The Guidelines do not define "assault" or "felonious assault," and sentencing courts have looked to the common law to define "assault" for Guidelines purposes. *See United States v.*

---

[1] The Guidelines define aggravated assault as a "felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1.

1

*Hampton*, 628 F.3d 654, 660 (4th Cir. 2010). Assault encompasses conduct intended to injure another or presenting a realistic threat of violence to another. *See United States v. Dat Quoc Do*, 994 F.3d 1096, 1099 (9th Cir. 2021) (federal common-law assault includes (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (citations omitted). With respect to Counts One and Five, Celentano rammed Officer Ellis from behind with enough force to lift him off his feet and send him tumbling over a five-foot ledge. For Counts Two and Three, Celentano chest bumped Officer Abdi, pushed and shoved other officers guarding the West Plaza, and then repeatedly shoved an unidentified officer at the West Plaza. Celentano's conduct in each of those instances reflected a "willful attempt to inflict injury upon" the police officers and "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, caused a reasonable apprehension of immediate bodily harm" on the officers.

Second, the assaults were "felonious" under 18 U.S.C. § 111. Under 18 U.S.C. § 111(a), an assault becomes felonious, or punishable as a felony, when "acts involve physical contact with the victim of that assault or the intent to commit another felony." As described above, it is indisputable that Celentano made physical contact with Officer Abdi, the other officers holding the line at the West Plaza, the unidentified officer at the West Plaza, and Officer Ellis.

Third, as a separate and alternative basis for the assault being "felonious" and "aggravated" as defined in U.S.S.G. § 2A2.2 cmt. n.1, Celentano committed each of those assaults with the intent to commit another felony. For Count One, the jury found beyond a reasonable doubt that Celentano acted with the intent to commit another felony, Interference with Officers During a Civil Disorder, when he rammed Officer Ellis from behind. ECF 74 at 2. This conduct also served as

the factual basis for Count Five. For Counts Two and Four, Celentano acted with the intent to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2). ECF 87 at 35-37.[3]

Celentano disregards the Guidelines' definition of aggravated assault and urges the Court to craft a new, definition of that crime without any legal basis. ECF 82 at 20-22.[4] Notably, Celentano does not provide any alternative definition of "aggravated assault" nor cite to any authority that the Sentencing Guidelines commentary for aggravated assault is "inconsistent", "expands", or is a "plainly erroneous" interpretation of the Sentencing Guidelines. *United States v. Otunyo*, 63 F.4th 948, 959 (D.C. Cir. 2023) ("we do not defer to the commentary if it is 'inconsistent with, or a plainly erroneous reading of, that guideline.'") (*quoting Stinson v. United States*, 508 U.S. 36, 38 (1993)). Indeed, Judge Hogan and Judge Kollar-Kotelly specifically rejected this argument. In *United States v. Sargent*, 21-cr-258, the defendant argued, as does Celentano, that *Kisor v. Wikley*, 139 S. Ct. 24000 (2019) undermined the deference a sentencing court should give to the commentary definition of "aggravated felony." *Sargent*, 21-cr-258, ECF 78 at 26. Judge Hogan disagreed and found that "the definition of aggravated assault found in the commentary is appropriate under 2A2.2 . . . and is not overruled by *Kisor*." *Id*. at 27. In *United*

---

[3] As explained in the Government's Sentencing Memorandum, although the jury acquitted Celentano of committing Count Seven, Obstruction of an Official Proceeding, the trial evidence proved, by at least a preponderance (the standard of proof applicable at sentencing), that Celentano intended to obstruct an official proceeding (Congress's certification of the election). ECF 87 at 35-37.

[4] Currently pending before the D.C. Circuit Court is an appeal in *United States v. Sargent* of a D.C. district court sentencing in which Judge Hogan rejected arguments on aggravated assault similar to those made by Celentano here.  Oral arguments in *Sargent* occurred on December 15, 2023, and can be found here: < https://www.cadc.uscourts.gov/recordings/recordings.nsf/DocsByRDate?OpenView&count=100 >.  For a more fulsome discussion of why the definition of aggravated assault in the Sentencing Guidelines should be controlling, *see* the Government's appellate brief in *Sargent*.  *See United States of America, Appellee, v. Troy Sargent, Appellant*, 2023 WL 5384180 (C.A.D.C.), 13-40, USCA Case #23-3005, Dkt. Number 2013283 (Aug. 21, 2023).

*States v. Sandoval*, 21-cr-195, Judge Kollar-Kotelly noted, "[t]he Government contends, and this Court agrees, that Sandoval asks the Court to adopt novel interpretations of both 18 U.S.C. § 111 and the Guidelines when he argues that only violations of 18 U.S.C. 111(b) can constitute aggravated assault." ECF 143 at 7. Judge Kollar-Kotelly then rejected Sandoval's argument and concluded, "that Defendant's felonious assaults on the three police officers … were aggravated assaults because they were committed with the *intent to commit* Civil Disorder and to Obstruct an Official Proceeding." *Id.* at 7-8 (emphasis added); *see also United States v. Valdez-Torres*, 108 F.3d 385, 389 n.10. (D.C. Cir. 1997) (noting that U.S.S.G. § 2A2.2 applies to different types of aggravated assaults including "an intent to commit another felony").[5]

## II. The Court is Required to Correctly Calculate the Applicable Guidelines Range Including the Use of Relevant/Acquitted Conduct.

Procedurally, the Court "must (1) accurately calculate the applicable Sentencing Guidelines range; (2) formally rule on the motions of both parties and state on the record whether the Court is granting a departure and how that departure affects the guidelines range; and (3) consider all the factors under 18 U.S.C. § 3553(a)." *United States v. Basley*, 357 F. App'x 455, 464 (3d Cir. 2009). Celentano argued that the inclusion or exclusion of relevant conduct in determining the applicable guidelines range is discretionary. Not so. The Court is obligated to correctly calculate a Defendant's guidelines range. *See, e.g., United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) ("First, we must ensure that the district court correctly calculated the applicable

---

[5] If the Court rejects the Sentencing Guidelines commentary definition for aggravated assault and determines that none of Celentano's assaults are aggravated under its new definition, the official victim adjustment (+6) under U.S.S.G. § 3A1.2(a), (b) would not apply to the affected counts of conviction. *See* U.S.S.G. § 2A2.4 Appl. Note 2 (noting that the U.S.S.G. § 3A1.2 (Official Victim) adjustment generally does not apply when using U.S.S.G. § 2A2.4 instead of U.S.S.G. § 2A2.2).

4

Guidelines range which are the starting point and initial benchmark of its sentencing analysis") (internal citations and quotation marks omitted).

The Sentencing Guidelines make clear that the base offense level, special offense characteristics, Chapter 2 cross references, and Chapter 3 adjustments "*shall* be determined on the basis of" the defendant's relevant conduct. *See* U.S.S.G. § 1B1.3 (Relevant Conduct) (emphasis added). "Relevant conduct" is "broadly defined." *United States v. Abu Khatallah*, 41 F.4th 608, 645 n.23 (D.C. Cir. 2022). Under Section 1B1.3(a)(1)(A), a defendant's "relevant conduct" encompasses "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," jointly undertaken criminal activity, acts that were part of the same course of conduct or common scheme or plan as the offense of conviction, "all harm that resulted" from the defendant's acts, and "all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a).  Relevant conduct considered at sentencing may also include acquitted conduct, "so long as the sentence does not exceed the statutory maximum and is based on conduct established by a preponderance of the evidence." *United States v. Bell*, 795 F.3d 88, 104–05 (D.C. Cir. 2015) (rejecting defendants' claims that the district court's consideration of 1.5 kilograms of crack cocaine from the acquitted conspiracy when calculating the Defendants' sentences was not "relevant conduct" for defendants' convictions for "street-level drug dealing"); *see also United States v. Williams*, 827 F.3d 1134, 1165–66 (D.C. Cir. 2016) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction or increase the statutory mandatory minimum.") (internal citation omitted).

When determining the applicable guidelines range, the relevant consideration is what facts have been determined by the Court or the jury by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 156 (1997) ("The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, [U.S.S.G.] § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process."); *see also United States v. Long*, 328 F.3d 655, 670 (D.C. Cir. 2003) ("This court, for its part, has noted the split among the circuits on this issue but has declined to require more than the preponderance standard at sentencing."). Courts may also consider acquitted conduct, proved by a preponderance of the evidence, in determining the applicable guidelines range. *See United States v. Bagcho*, 923 F.3d 1131, 1141 (D.C. Cir. 2019) (affirming the district court's consideration of uncharged and acquitted conduct in calculating the defendant's Guidelines range); *United States v. Bell*, 795 F.3d 88, 104–05 (D.C. Cir. 2015) (rejecting the defendant's argument that acquitted conduct could only be taken into consideration in the 18 U.S.C. § 3553 analysis, and could not be taken into account by the sentencing judge in calculating the Defendants' base offense levels under the U.S.S.G.).

After determining the applicable sentencing guidelines range, the Court may then decide to depart or vary based on the 3553(a) factors. *See United States v. Settles*, 530 F.3d 920, 924 (DC Cir. 2008); *see also*, *United States v. Bell*, 808 F.3d 926, 928-929 (D.C. Cir. 2015) (Kavanaugh, J., concurring) ("To be sure, when calculating the advisory Guidelines range, district judges may have to factor in relevant conduct, including acquitted or uncharged conduct. But those Guidelines are only advisory, as the Supreme Court has emphasized. So district judges may then vary the sentence downward to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct.") (denying rehearing en banc) (the panel affirmed a 192-month prison sentence based in

6

part on defendant's acquitted conduct where the Guidelines range, based only on the conduct of conviction, was 51 to 63 months).  Although judges have the discretion to vary after applying acquitted conduct in their Guidelines analysis, here, a downward variance would not be appropriate in light of Celentano's egregious conduct, including the horrific attack on Officer Ellis.

In *Watts*, the Supreme Court explicitly rejected Celentano's argument here that the Court should not factor in acquitted conduct prior to determining the applicable guidelines range. *Watts*, 519 U.S. at 153 (rejecting the dissent's argument that the court must "close its eyes to acquitted conduct at earlier stages of the sentencing process" and noting that "argument ignores § 1B1.3 which, as we have noted, directs sentencing courts to consider all other related conduct, whether or not it resulted in a conviction."). In *United States v. Thomas*, D.D.C. 21-cr-552, Thomas (like Celentano) made numerous social media posts, recorded himself declaring that he and his fellow rioters were going to storm the Capitol, attacked officers, did not enter the Capitol Building, and was acquitted of obstruction of an official proceeding. ECF 203. Judge Friedrich applied the U.S.S.G. § 2B2.3(c) cross reference based on acquitted relevant conduct and then varied downward based on the § 3553(a) factors. *Thomas*, 21-cr-552, ECF 226 at 3. Notably, Thomas's assaults were similar to Celentano's assaults on the officers at the Lower West Plaza but never reached the intensity or dangerousness of Celentano's attack on Officer Ellis (i.e., Thomas, unlike Celentano, did not blind-side tackle any officers over a ledge).

**III.    Alternative Grouping Analysis for Counts One Through Six**

The United States respectfully incorporates the grouping analysis from its first sentencing memorandum. ECF 87 at 40-41 (explaining that if all appropriate enhancements, cross references, and adjustments are applied that all counts would group).

      a.   <u>Alternative Grouping 1: Court Does Not Cross Reference to 2J1.2 (Intent to Obstruct a Congressional Proceeding) for Count Three But Does Apply § 2A2.2(b)(2)(C) (Dangerous Weapon) for Counts Two and Four</u>

If the Court believes that Celentano's intent to obstruct Congress' certification of the presidential election, in violation of 18 U.S.C. §1512(c)(2), was *not* proven by a preponderance of the evidence, and accordingly that it was not an intended felony for purposes of the § 2B2.3(c)(1) cross reference for Count Three, then the grouping analysis would be as follows:

Pursuant to 3D1.2(a)-(b), based solely on the victims of each offense, there would initially be three groups:

Group One – Counts One and Five, the victim is Officer Ellis;

Group Two – Counts Three and Four, the victim is Congress; and

Group Three – Count Two, the victims are Officer Abdi and the other officers who were impeded on the West Plaza.

Count One would then group with Count Three pursuant to § 3D1.2(c), since Count One embodies conduct (the violent assault of Officer Ellis) that is treated as the six-level adjustment under U.S.S.G. § 3A1.2(c), an assault against a police officer that created "a substantial risk of serious bodily injury," in Count Three.

Additionally, the conduct in Count Two (Celentano's attack with the riot shield, a dangerous weapon) would still serve as a specific offense characteristic for Count Three and Count

8

Four, specifically, the three-level enhancement under U.S.S.G. §2A2.2(b)(2)(C) for brandishing or threatening the use of a dangerous weapon, and group with Counts Three and Four pursuant to § 3D1.2(c).[6]  **Accordingly, there would still be one group**.  However, the highest offense level for the group would be 25, since the Guideline, enhancements, and cross reference for U.S.S.G. § 2A2.4 would be used for Count Three.

      b. <u>Alternative Grouping 2: Court Does Not Cross Reference to 2J1.2 (Intent to Obstruct a Congressional Proceeding) for Count Three And Does Not Apply § 2A2.2(b)(2)(C) (Dangerous Weapon) for Counts Two and Four</u>

If the Court believes that (1) Celentano's intent to obstruct Congress' certification of the presidential election, in violation of 18 U.S.C. §1512(c)(2), was *not* proven by a preponderance of the evidence, and accordingly that it was not an intended felony for purposes of the § 2B2.3(c)(1) cross reference for Count Three, and (2) the +3 enhancement under U.S.S.G. §2A2.2(b)(2)(C) for brandishing or threatening the use of a dangerous weapon does *not* apply to counts Two and Four, then the grouping analysis under U.S.S.G. § 3D1.2 would be as follows:

Again, pursuant to 3D1.2(a)-(b), based solely on the victims of each offense, there would initially be the same three groups as discussed above. Count One would then again group with Count Three pursuant to 3D1.2(c), since Count One embodies conduct (the violent assault of Officer Ellis) that is treated as the six-level adjustment under U.S.S.G. § 3A1.2(c), an assault

---

[6] Even if the Court declines to use 18 U.S.C. § 1512(c)(2), obstruction of an official proceeding, as the intended felony for Count Three, the U.S.S.G. § 2B2.3(c)(1) cross reference for an intended felony would still apply, as Celentano's trespass was also done with the intent to obstruct and impede law enforcement officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3). Accordingly, the Guideline for 18 U.S.C. § 231(a)(3) would be used, U.S.S.G. § 2A2.4. This would lead to a cross reference to U.S.S.G. § 2A2.2 (*see* ECF 87 at 29) and use of the U.S.S.G. § 2A2.2(b)(2)(C) enhancement for brandishing or threatening the use of a dangerous weapon, as noted above.

9

against a police officer that created "a substantial risk of serious bodily injury," in Count Three. However, Count Two would no longer group with Counts Three or Four, because the conduct in Count Two (Celentano's attack with the riot shield, a dangerous weapon) would no longer serve as a specific offense characteristic for Counts Three and Four (as there would be no three-level enhancement under U.S.S.G. §2A2.2(b)(2)(C) for brandishing or threatening the use of a dangerous weapon).  **Accordingly, there would be two groups:**

Group One – Counts One, Three, Four, and Five: Highest Offense Level – 22

Group Two –Count Two: Highest Offense Level – 22

The total number of units is two pursuant to U.S.S.G. § 3D1.4(a), and according U.S.S.G. § 3D1.4, Group One's offense level of 22 is increased by two offense levels, for a combined offense level of 24.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that Court impose a sentence of 135-months' incarceration, three-years' supervised release, $2,000 restitution, and $300 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:   */s/*_____
      JACQUELINE SCHESNOL
      SHALIN NOHRIA

10