**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. Action No. 22-186 (TJK)** |
| **RALPH JOSEPH CELENTANO III,** | |
| **Defendant.** | |

**DEFENSE SUPPLEMENT TO SENTENCING MEMORANDUM**

The defense submits this sentencing supplement to address various issues raised by the Court during the December 1, 2023 proceeding as well as by the government in its sentencing memorandum (ECF No. 87) and sentencing supplement (ECF No. 90) including: (1) the aggravated assault guideline; (2) the use of acquitted conduct; (3) the government's grouping analysis; (4) the dangerous weapon enhancement; and (5) the obstruction of justice enhancement. The defense incorporates all facts and arguments from our objections to the presentence report (ECF No. 82) and sentencing memorandum (ECF No. 86).

**I.     The Aggravated Assault Guideline is Inappropriate Here**

The defense maintains that the aggravated assault guideline is inappropriate here as to all counts for the reasons stated below.

**A.  Counts Two and Four**

During the December 1, 2023 proceeding, the government argued that the aggravated assault guideline applies to count two, civil disorder, and count four, disorderly and disruptive conduct in a restricted building or grounds, because both involved felonious assaults that were

1

committed with the intent to commit another felony. Tr. of Dec. 1, 2023, at 53, 87. The "other felony" that the government is relying on in arguing for the aggravated assault guideline for counts two and four is § 1512(c)(2), the charge for which Mr. Celentano was acquitted. *Id*. For the reasons stated below in Part II, the Court should not consider acquitted conduct in its sentencing calculation. Therefore, the correct guideline for counts two and count four is obstructing or impeding officers, U.S.S.G. § 2A2.4.

   **B**. **Counts One and Five**

   As to the government's contention that the aggravated assault guideline, and the official victim enhancement, applies to counts one and five, the defense relies on and incorporates the arguments made in our objections to the PSR (ECF No. 82, at 19-22), and arguments made during the December 1, 2023 proceeding. *Assuming arguendo*, that the Court were to agree with the government and find that the aggravated assault guideline and the official victim enhancement are applicable to counts one and five, the defense submits that the following offense calculation is accurate:

**Base Offense Level (U.S.S.G. § 2A2.2(a))**                                          **14**

**Official Victim Adjustment (U.S.S.G. § 3A1.2(a)):**                              **+6**

**Total:**                                                                                              **20**


   **II.**      **The Court Should Not Consider Acquitted Conduct**

   Contrary to the government's argument, the Court is not required to consider acquitted conduct in calculating the Guidelines and, in this case, should not consider acquitted conduct for several reasons: (1) the Guidelines are clear that it is a matter of discretion for the Court; (2) several other judges in this district have declined to apply the cross-reference in similar circumstances; (3) the Sentencing Commission ("Commission") had made it abundantly clear

that it will be changing the way acquitted conduct can be considered, if at all, in the upcoming year; and (4) the Supreme Court's grant of certiorari in the *Fischer* case.

First, in terms of whether the Court has the discretion to consider acquitted conduct in calculating the Guidelines, it is evident based on the commentary to the Guidelines, the government's own papers, and most importantly, the way other judges in this district have handled the issue, that the Court is not required to consider acquitted conduct. There is no mention of acquitted conduct in the Guidelines themselves. Rather, courts have interpreted the following statement which is contained in the commentary to U.S.S.G. § 1B1.3, relevant conduct, to include acquitted conduct, "Conduct that is not formally charged or is not an element of the offense *may* enter into the determination of the applicable guideline range." U.S.S.G. § 1B1.3 comment. (backg'd.) (emphasis added). The Commission's use of the word "may," as opposed to "shall" or "must" or "should", is clear and unambiguous in that it gives courts discretion.[1] Contrary to the government's argument, there are no circumstances where the court is required to consider acquitted conduct in its sentencing calculation.

The government's reliance on *United States v. Williams,* 827 F.3d 1134 (D.C. Cir. 2016), to support their position that acquitted conduct *must* be considered, is misplaced. *See* ECF No. 90, at 5. In *Williams*, the D.C. Circuit Court agreed that a plain reading of the Guidelines commentary allows courts discretion in whether to consider acquitted conduct. There, the court held that, "a sentencing judge *may* consider uncharged or even acquitted conduct in calculating

---

[1] In its supplemental papers, the government cites to cases where the D.C. Circuit Court rejected arguments that district courts are not permitted to consider acquitted conduct in determining the Guideline range. *See* ECF No. 90, at 6. In this case, the defense is not arguing that the Court is not permitted to consider acquitted conduct, but rather that, even if the conduct has been proven by a preponderance, the Court has discretion.

an appropriate sentence so long as that conduct has been proved by a preponderance of the evidence . . .”*Id.* at 1165-66 (emphasis added). The court is explicit that if the government has not proven the conduct by a preponderance, then a court is prohibited from considering the conduct. If on the other hand, a court determines that the conduct has been proven by a preponderance, then the court has the discretion, or is permitted, to consider the conduct.

Multiple courts in this district have declined similar requests by the government to use acquitted conduct. Courts have specifically declined to apply cross-references to acquitted and/or dismissed conduct in January 6th cases.

In *United States v. Riley June Williams*, 21-cr-618 (ABJ), the Honorable Judge Amy Berman Jackson declared a mistrial on the count charging § 1512(c)(2) after the jury failed to reach a verdict. The government dismissed the count prior to sentencing. However, in calculating the Guidelines for the trespass charge, the government argued that the cross-reference under U.S.S.G. § 2B2.3(c)(1) applied because, “[d]espite the jury reaching a stalemate on Count Two, the trial evidence established by at least a preponderance of the evidence that Williams unlawfully remained in the Capitol building . . .with the intent to obstruct a congressional proceeding in violation of 18 U.S.C. § 1512, which is a felony.” No. 21-cr-618, ECF No. 139, at 23-24. In other words, the government in the *Williams* case made the same request as the government makes in this case, except that in *Williams* the jury did not acquit Ms. Williams of the obstruction charge – it could not reach a decision. Judge Jackson denied the government’s request and ruled that she would not sentence on counts in which the jury could not reach a verdict. Moreover, Judge Jackson expressed concern that if she were to apply the cross-reference on the trespass misdemeanor charge, the Guideline range would far exceed the statutory

maximum for that charge – similar concerns that that the defense raised during the December 1, 2023 proceeding.[2]

In *United States v. Crowl et. al.*, 21-cr-028 (APM), one of the defendants, Michael Greene, was convicted only of the misdemeanor trespass charge, acquitted of §1512(k) and §1512(c)(1), and the jury failed to reach a verdict on §1512(c)(2) charge. The government dismissed the §1512(c)(2) charge prior to sentencing. However, just as in the instant case, the government argued for the cross-reference to §1512(c)(2)[3], on the misdemeanor trespass. Yet, as opposed to this case where the government is asking the Court to apply a cross-reference to a charge the jury unanimously acquitted Mr. Celentano of, the government in Mr. Greene's case was not asking the court to consider acquitted conduct but rather dismissed conduct in which the jury could not reach a verdict. The Honorable Judge Amit P. Mehta declined to apply the cross-reference, and, during sentencing, expressed the importance of all parties respecting the jury process and jury verdicts.[4]

Thus, it is apparent that, even if the Court finds that the government proved that Mr. Celentano intended to obstruct the electoral college certification by a preponderance of the

---

[2] The defense is relying on information provided by counsel of record for Riley June Williams as we were informed that transcripts would take, at a minimum, thirty days, to be provided to the defense.

[3] Interestingly, in the government's sentencing memorandum in Mr. Greene's case, the government makes a point to remind the Court that Mr. Greene was not acquitted of §1512(c)(2) charge, and therefore, the government was not asking the court to consider acquitted conduct. 21-cr-028, ECF No. 995, at 2-3.

[4] The defense is relying on information provided by counsel of record for Michael Greene as we were informed that transcripts would take, at a minimum, thirty days, to be provided to the defense.

evidence, the Court may, but is not required to, consider acquitted conduct in its sentencing calculation.[5]

To be clear, the defense strongly believes that the government did not prove by a preponderance of the evidence that Mr. Celentano intended to obstruct the electoral college certification, and thus the Court is not permitted to consider acquitted conduct. *See* ECF No. 82, at 16-17; Trial Tr. of June 9, 2023 at 1478-1485. However, *assuming arguendo*, that the Court disagrees and believes that the government met its burden on the obstruction charge, the next question is whether the Court should apply a cross-reference to acquitted conduct in this case. In our objections to the presentence report and during the December 1, 2023 proceeding, the defense cited many reasons why the Court should decline to consider acquitted conduct. *See* ECF No. 82, at 23-25. However, there are two recent developments that further support that the Court should not apply a cross-reference to the §1512(c)(2).

First, arguments that the Sentencing Commission is seeking to revise the provision of the Guidelines which permits consideration of acquitted conduct are no longer speculative.  On December 14, 2023, the Commission released for public comment its preliminary proposed amendments for 2024.[6] Included in the proposed amendments are changes to how acquitted conduct can be used in calculating the Guidelines. The Commission proposed three separate options: (1) prohibiting the use of acquitted conduct in calculating the Guidelines; (2) providing

---

[5] In its sentencing supplement, the government cited to one case where the defendant was acquitted of §1512(c)(2) charge and the Honorable Dabney L. Friedrich applied the cross-reference to §1512(c)(2) on the trespass Guidelines calculation. *See* ECF No. 90, at 7. The government did not provide the sentencing transcript or any information as to Judge Friedrich's reasoning, making it impossible for the defense to craft an appropriate response.

[6] United States Sentencing Commission, Proposed Amendments to the Sentencing Guideline (Preliminary), December 14, 2023, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20231214_prelim-RF-proposed.pdf.

for a downward departure if the use of acquitted conduct disproportionately affects the Guidelines range; or (3) changing the burden of proof required for a court to be able to consider acquitted conduct from preponderance of the evidence to clear and convincing evidence.[7] It is now clear that the Commission will be making changes to the way acquitted conduct can be considered, and any one of the proposed options would affect the way this Court is able to use acquitted conduct in calculating the Guidelines range. The preliminary amendment further supports that the Court should not consider acquitted conduct in its sentencing calculation in this case.

Finally, the Supreme Court's decision to grant certiorari in *United States v. Fischer* is important for this Court's consideration of whether to apply a cross-reference to acquitted conduct. As the Court is aware, the decision in *Fischer*, which will answer whether 18 U.S.C. § 1512(c) can apply to acts unrelated to investigations and evidence, has the potential to dramatically affect hundreds of January 6 cases. Because Mr. Celentano was acquitted of §1512(c)(2), the *Fischer* decision should not be relevant in this case. However, it is highly relevant because the government is asking this Court to consider acquitted conduct. Thus, the upcoming *Fischer* decision provides even more reason for the Court to decline to apply the cross-reference to §1512(c)(2). If the Court were to grant the government's request, and the Supreme Court holds that §1512(c)(2) charge does not apply in the January 6 context, then the Court would be applying a cross-reference to acquitted conduct for a charge subsequently found to be invalid. The grant of certiorari is yet another reason why this Court should, even if it finds the government has proven §1512(c)(2) by a preponderance of the evidence, decline to consider acquitted conduct in calculating the Guidelines.

---

[7] *See id.*

Should the Court consider the acquitted conduct in this case, we object to the PSR's combined 11 point enhancement under §2J1.2 because Mr. Celentano's conduct did not involve substantial interference with the "administration of justice" for all of the reasons articulated by the Court in *United States v. Hunter Seefriend*, 21-cr-287(TNM), ECF No. 123. In *Seefriend*, the Court declined to apply the enhancement, finding that the electoral certification did not involve the administration of justice. *Id.*

### III.     Counts One through Six Should be Grouped Together

The defense maintains that all counts should be grouped together as they are closely related. "Counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim, are to be grouped together even if they constitute legally distinct offenses occurring at different times." U.S.S.G. § 3D1.2, comment. (no. 4). While Officer Abdi, and the unidentified officer on the lower West Terrace may be considered victims, it is clear that Officer Ellis was the primary victim in Mr. Celentano's case – both factually based on the evidence, and as a legal matter, since Officer Ellis was the only officer named in the indictment as well as the instructions to the jurors. It was readily apparent from the trial evidence and the government's theory of its case that Officer Abdi and the unidentified officer, were secondary victims. *See* U.S.S.G. § 3D1.2, comment. (n. 2) ("the term 'victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim."). *See* ECF No. 82, at 26-28. The government's sentencing memorandum and supplemental response, while proposing alternative grouping analyses, both fail to address what the Guidelines clearly state – that secondary victims, when part of a single course of conduct, are not grouped separately.

The government argues, in various grouping scenarios, that Congress is a victim. We disagree. First, Mr. Celentano was acquitted of the only count that Congress was arguably part of - obstruction of the electoral college certification. As has previously been discussed at length, this conduct should not factor into a Guidelines analysis. Secondly, a factual analysis of Mr. Celentano's actions shows that he did not ever enter or attempt to enter the Capitol Building. Finally, even *assuming arguendo* that Congress was a victim, Congress is clearly a secondary victim to Officer Ellis. The government attributes Congress as the victim on counts three and four (trespassing and disorderly conduct). However as the trespassing and disorderly conduct occurred simultaneously to Mr. Celentano's interactions with Officer Ellis, the acts are part of a "single course of conduct." U.S.S.G. § 3D1.2, comment. (no. 4).

The government provides two grouping alternatives in its supplemental briefing. The first alternative contemplates a grouping analysis where the Court does not consider acquitted conduct but does apply the dangerous weapon enhancement. *See* ECF No. 90, at 8-9. For the reasons stated above, the dangerous weapon enhancement does not apply here and that analysis is inapplicable. The second grouping analysis considers an outcome where the Court does not consider acquitted conduct and does not apply the dangerous weapon enhancement.  *Id*. at 9-10. Under this analysis, the government finds three separate groupings (distinct groups for the victims Officer Ellis, Officer Abdi, and Congress) and argues that §3D1.2(c) is inapplicable "because the conduct in Count Two (Celentano's attack with the riot shield, a dangerous weapon) would no longer serve as a specific offense characteristic for Counts Three and Four" if the Court does not apply the brandishing enhancement. However, the government's argument that a brandishing enhancement ever *could* apply to counts three and four illustrates that these counts are connected by a common criminal objective (*i.e.* Mr. Celentano's pushing against the

riot shield was part of his trespassing and disorderly conduct), and are thus one group. Therefore, the Court should apply §3D1.2(b), finding one group for all counts.

**IV.     The Dangerous Weapon Enhancement is Inapplicable**

At no time on January 6, 2021 did Ralph Celentano possess, no less brandish, a dangerous weapon.  The PSR correctly does not apply such an enhancement. The government sought this enhancement for the first time in its sentencing memorandum, filed on November 22, 2023, but notably did not object to the lack of enhancement in the PSR. This Court should deny application of any enhancement under U.S.S.G. § 2A2.2(b)(2)(C) because it has not been established, nor could it be, that "a dangerous weapon was brandished of its use was threatened."

The government claims that Mr. Celentano "used the size and weight of the police riot shields as leverage to offensively push against the officers guarding the Capitol Building," ECF No. 87, at 29. Multiple video angles and testimonial accounts of Mr. Celentano's actions that day are in the trial record. At no point did Mr. Celentano pick up a shield and use it in an offensive manor. "Pushing against" a shield is a far cry, both logically and legally, from brandishing a dangerous weapon. The defense is unaware of any case in which pushing past officers holding shields led to the use of the enhancement the government seeks.

The cases the government cites to where police shields were considered "dangerous weapons" are factually inapplicable. *See United States v. McCaughey, III et al*, 21-cr-40 (TMN) (where the defendant acquired a police riot shield and used the shield inside of the tunnel to pin an officer against a wall, effectively crushing him); *United States v. Vincent Gillespie*, 22-cr-60 (BAH) (where the defendant possessed multiple police riot shields at different time to offensively push his way forward).

V.      **An Obstruction of Justice Enhancement Should Not Be Applied**

The defense previously objected to an enhancement in the PSR for obstruction of justice under the theory that Mr. Celentano perjured himself at trial. *See* ECF No. 82, at 6-17. For all of the reasons outlined in detail in the prior defense objections, Mr. Celentano did not make false statements with a willful intent concerning material matters, as would be required to for such an enhancement.

The final probation report concluded, "As this was a jury trial and the Court was privy to evidence presented by both parties in this case, it appears the Court would be in the best position to determine the accuracy of the information and the defendant's state of mind." ECF No. 83, at 29. The Court agreed during legal arguments on December 1, 2023, noting that the Court had to review the transcript further before hearing argument on the issue. The defense notes that in our objections to the PSR, we cite numerous pieces of testimony from the transcript for the Court's reference. We now write to address additional material provided by the government in its sentencing submission.

In its sentencing submission, the government attached an additional video which was found after trial. *See* ECF 87, Exhibit 1. The defense acknowledges that this video, for the first time, shows that the civilian, whom Officer Ellis was hitting with his baton, has his arm around the neck of another officer. This video corroborates Officer Ellis's testimony that he was hitting a civilian with his baton because he observed the civilian with his arm around another police officer's neck. This video does not, however, contradict Mr. Celentano's testimony. Mr. Celentano was twenty to thirty feet behind Officer Ellis when he first observed Officer Ellis. Officer Ellis was on a platform, with the protestor five feet below him in a scrum surrounded by police officers. Mr. Celentano was northwest of Officer Ellis. Officer Ellis had his back to Mr.

Celentano, who was at the same level as him. Officer Ellis was also leaning over a ledge. The video footage now being introduced at sentencing is from the point of view of someone standing to the east of Officer Ellis, able to view Officer Ellis's profile as well as directly see the people below the ledge from a birdseye view. It is an entirely different perspective from the view Mr. Celentano would have had. Further, the fact that the protestor had an officer in a headlock can only be seen when the video is slowed down or paused completely – a luxury that no one had that day. The fact that Mr. Celentano did not see what is captured in the video makes sense. The video does not impact the truthfulness of Mr. Celentano's testimony in any way.

**VI.    Conclusion**

For the foregoing reasons, the defense respectfully requests the Court find the correction Guidelines range in this case is 12-18 months.

Respectfully submitted,

___/s/_____
Marissa Sherman
Kathryn Wozencroft
Attorneys for Ralph Joseph Celentano III
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201