UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RALPH JOSEPH CELENTANO, III<br><br>Defendant. | Case No. 22-cr-186-TJK |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SUPPLEMENT TO SENTENCING MEMORANDUM**

The United States respectfully submits this response to the Defendant's Supplemental Sentencing Memorandum (ECF 92). As set forth in the government's prior Sentencing Memoranda (ECF 87) and Supplemental Sentencing Memoranda (ECF 90), the Court must consider the defendant's relevant conduct when determining his guidelines range; the Court should not group counts with distinct victims; and the guidelines analysis should include both the three-level enhancement under U.S.S.G. § 2A2.2(b)(2)(C) for brandishing a dangerous weapon as well as the two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice.[1]

**I.    The Court Must Consider Relevant Conduct When Calculating Sentencing Guidelines under U.S.S.G. § 1B1.3[2]**

As discussed below, while district judges have discretion in applying acquitted conduct when calculating a defendant's Guidelines range, the Court must consider all of the defendant's conduct that the government proved by a preponderance of the evidence that is also "relevant

---

[1] The United States incorporates all facts and arguments contained within its first Sentencing Memorandum (ECF 87), statements made at the sentencing hearing on December 1, 2023, and Supplemental Sentencing Memo (ECF 90).

[2] The United States respectfully incorporates the relevant conduct analysis from its first sentencing memorandum (ECF 87 at 35-38) and its supplemental sentencing memo (ECF 90 at 4-7). To the extent the Court does not apply the 2J1.2 Cross Reference, the Government will request an upward variance pursuant to U.S.S.G. § 5K2.7.

1

conduct" under U.S.S.G. Section 1B1.3. That includes conduct that was the basis for a charge on which the jury returned a verdict of not guilty (i.e., acquitted conduct). Indeed, the U.S.S.G. and case law suggest that it may be reversible error not to consider such conduct when calculating the initial Guidelines range, and the proper mechanism for exercising judicial discretion regarding acquitted conduct in that instance would be imposing a variance (not ignoring such conduct during the calculation of the Guidelines range).

### a. The Court is required to consider acquitted conduct if it falls within the relevant conduct for a convicted offense

The Sentencing Guidelines state that a defendant's base offense level, specific offense characteristics, Chapter 2 cross references, and Chapter 3 adjustments "*shall* be determined on the basis of" the defendant's relevant conduct, i.e., it is mandatory. U.S.S.G. § 1B1.3 (emphasis added). Relevant conduct in turn is defined to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," jointly undertaken criminal activity, acts that were part of the same course of conduct or common scheme or plan as the offense of conviction, "all harm that resulted" from the defendant's acts, and "all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a). Under this broad definition, relevant conduct may include acquitted conduct. *United States v. Watts*, 519 U.S. 148, 152-153 (1997). It will do so where (1) that conduct is established by a preponderance of the evidence, *United States v. Bell*, 795 F.3d 88, 104–05 (D.C. Cir. 2015), and (2) the acquitted conduct is part of the same course of conduct of the offense of conviction, U.S.S.G. § 1B1.3(a); *see also United States v. Cox*, 851 F.3d 113, 121 (1st Cir. 2017) ("uncharged and acquitted conduct is 'relevant conduct' if it is part of the same 'course of conduct or common scheme or plan' as the conduct underlying the counts of conviction").

2

The question for the Court in this case is not whether it has discretion to consider acquitted conduct; it clearly does. The question instead—which the defendant ignores—is whether the actions Celentano undertook to obstruct Congress's certification of the election (the acquitted conduct) are relevant conduct for determining the guidelines range for his violation of 18 U.S.C. § 1752(a)(1). Because those actions are relevant conduct, the court must consider them for the purposes of the Chapter 2 cross reference at issue here.

The Sentencing Guidelines make clear that establishing a defendant's intent is essential to determining the appropriate sentence. *See* U.S.S.G. § 2B2.3(c)(1) ("If the offense was committed with the intent to commit a felony offense, apply § 2X1.1"); *accord U.S. v. Watts*, 519 U.S. 148, 154 (1997) ("As we explained in *Witte*, however, sentence enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction."). Here, Celentano's statements before, during, and after the January 6th riot are critical pieces of information for determining his intent, his plans, and the resulting harm which ensued when he entered and remained within the Capitol's restricted perimeter, in violation of 18 U.S.C. § 1752(a)(1).

As far as whether the conduct is established by a preponderance of the evidence, the statements speak for themselves.  The defendant said via text, social media, and on video, that: Joe Biden should not be President; "we must take back what is ours, if elected officials won't we will do it ourselves"; "Occupy the Capitol, it's our building"; and "We did boys, we stormed the Capitol!" These statements demonstrate that Celentano's intent when he entered and remained within the restricted perimeter on January 6, 2021 and violated 18 U.S.C. § 1752(a)(1) was to disrupt the electoral certification.

3

Therefore, the acquitted conduct at issue is relevant conduct. And because it is relevant conduct, the Court must consider it.

### b. U.S.S.G. § 1B1.3 reinforces that the Court must consider the acquitted conduct here since it is relevant conduct

In addition to his arguments that the consideration of acquitted conduct is discretionary, which it is when not including relevant conduct, the defendant also points to the use of "may" in the commentary for U.S.S.G. § 1B1.3. ECF No. 92 at 3. But in the same way the commentary for U.S.S.G. § 6A1.3 makes clear what is not prohibited from consideration when trying to determine disputed facts, the purpose of the commentary for U.S.S.G. § 1B1.3 is to clarify what is not prohibited from consideration when determining the scope of relevant conduct. In that context, the use of "may" is appropriate since conduct outside of the counts of conviction cannot *automatically* be considered, such conduct must first meet the preponderance of the evidence threshold. *See United States v. Bell*, 795 F.3d 88, 104–05 (D.C. Cir. 2015). Then if a fact has been proven by a preponderance of the evidence, and is part of the same course of conduct underlying the counts of conviction (i.e., is relevant conduct), the sentencing guidelines are clear that the Court *shall* consider that fact in determining, among other areas, Chapter 2 cross references. *See* U.S.S.G. § 1B1.3 (Relevant Conduct)("(iii) cross references in Chapter Two *shall* be determined on the basis of the following …"); *Witte v. United States,* 515 U.S. 389, 402 (1995) ("the relevant conduct provisions are designed to channel the sentencing discretion of the district courts and to make *mandatory* the consideration of factors that previously would have been optional") (emphasis added); *see also United States v. Abu Khatallah,* 314 F. Supp. 3d 179, 187 (D.D.C. 2018) ("In fact, it would likely be a procedural error for the Court to outright refuse to consider conduct for which [the defendant] was acquitted when calculating his Guidelines range."). Thus, the commentary for

4

U.S.S.G. § 1B1.3 reinforces the requirement that the Court must look at the defendant's acquitted conduct when it is part of the relevant conduct for a count of conviction.[3]

### c. The Sentencing Commission's Request for Comment on Preliminary Proposals has no impact on the Court's calculation of the applicable guidelines range

The defendant also argues that the Sentencing Commission's decision to seek comment on *preliminary proposals* addressing acquitted conduct for a future Sentencing Guidelines edition warrants disregarding the current published Sentencing Guidelines. ECF 92 at 6-8. The defendant is wrong. The Court is directed that it "*shall* use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11. The rationale for this policy is obvious: the Sentencing Commission does not always adopt proposals for amendments to the Sentencing Guidelines, as evidenced by their January 2023 proposed amendments regarding acquitted conduct and their subsequent omission from the November 2023 Sentencing Guidelines.[4] The press release

---

[3] Now-Justice Kavanaugh indicated in his concurrence in *Bell* that the appropriate mechanism for exercising discretion when it comes to acquitted conduct that is relevant conduct is in varying downward, not in the initial calculation of the Guidelines range in Chapters 2 and 3:

> …[F]ederal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct. To be sure, when calculating the advisory Guidelines range, district judges may have to factor in relevant conduct, including acquitted or uncharged conduct. But those Guidelines are only advisory, as the Supreme Court has emphasized. So district judges may then vary the sentence downward to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct.

United States v. Bell, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc).

[4] During the 2022-2023 amendment cycle, a proposed amendment was introduced that would have prohibited acquitted conduct from being considered relevant conduct in determining a defendant's Guidelines range, except in very limited circumstances. *See* Proposed Amendments to the Sentencing Guidelines (Preliminary) January 12, 2023 < https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230112_prelim_RF.pdf > at 215-228. This amendment received extensive public comment. *See* Public Comment From March 14, 2023, Sample of Public Comment Received on Proposed Amendments, 88 FR 7180 < https://www.ussc.gov/policymaking/public-

5

accompanying the December 2023 Proposed Amendments to the Sentencing Guidelines (Preliminary) also makes clear that the Sentencing Commission may continue the use of acquitted conduct and that "all options are on the table."[5] The Court should thus not disregard the existing Sentencing Guidelines on the basis of a *potential* and unenacted change (among three different possible options) to future guidelines, especially where they have not yet received the benefit of a full comment and consideration period.

### d. The grant of certiorari in *Fischer* also has no impact the Court's calculation of the applicable guidelines range

The defendant further argues that the Supreme Court's decision to grant certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted* 23-5572, is a basis for not applying the applicable cross-reference, even if it finds by a preponderance of the evidence that Celentano's intent when he entered the restricted perimeter on January 6, 2021 was to disrupt the electoral certification. ECF 92 at 6-8. Notably, the defense does not cite, nor has the government identified, any case that supports this proposition. Nor do the Sentencing Guidelines state anywhere that a grant of certiorari should impact a guidelines range calculation.

Moreover, a panel of the D.C. Circuit and every district court judge but one has agreed with the government's interpretation of that statute. *See Fischer*, 64 F.4th at 338 ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions…. The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants.").

---

comment/public-comment-march-14-2023#acq >. Despite considering a proposed amendment that would have prohibited the use of acquitted conduct in the specific manner the Government advocates for here, the Commission decided not to adopt that amendment in the 2023 Guidelines. *See* U.S. SENT'G COMM'N, GUIDELINES MANUAL §3E1.1 (Nov. 2023), < https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2023/GLMFull.pdf >.

[5] https://www.ussc.gov/about/news/press-releases/december-14-2023.

The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question."). Moreover, as one Circuit judge has explained, even if the Supreme Court reverses the Court of Appeals in *Fischer,* defendants who obstructed the certification could still be convicted of obstruction of an official proceeding. *See Brock v. United States*, No. 23-3045, 2023 WL 3671002, at *2–3 (D.C. Cir. May 25, 2023) (per curiam) (Millet, J., concurring) (Defendant's "conduct necessarily obstructed the handling, submission, processing, and congressional consideration of the evidence of each State's electoral votes" because it interfered with the counting of ballots.). Similarly, a court could still find, by a preponderance, that 2J1.2 is the appropriate guideline here.

## II.    Grouping Analysis

There are three initial groups based on victims of each offense, pursuant to U.S.S.G. §§ 3D1.2(a) and (b)[6]:

Group One: Counts One and Five, the victim is Officer Ellis.

Group Two: Counts Three and Four: the victim is Congress.

Group Three: Count Two: the victims are Officer Abdi and the other officers who were impeded on the West Plaza.

Defendant does not dispute that Officer Ellis is the victim of Counts One and Five. However, the defendant asserts that Congress is not a victim of Counts Three and Four (the 18 U.S.C. §§ 1752(a)(1) and (a)(2) offenses). Courts in this District have repeatedly found otherwise.

---

[6] The government incorporates the grouping analysis from its first sentencing memorandum (ECF 87 at 40-41) and its supplemental sentencing memo (ECF 90 at 8-10).

*See United States v. St Cyr*, 22-cr-185 (JDB) (Tr. 9/13/2023 at 20) (the Court specifically stated Congress was a victim of 18 U.S.C. §§ 1752 (a)(1) and (a)(2), where defense asserted all counts grouped into one group); *United States v. Jose Padilla*, 21-cr-214 (JDB) (Tr. 9/13/2023 at 28) (the Court specifically stated Congress was a victim of 18 U.S.C. §§ 1512(c)(2), 1752 (a)(1) and (b)(1)(A), and 1752 (a)(2) and (b)(1)(A)); *United States v. Maly*, 21-cr-178-3 (APM), Tr. 6/9/2023 at 17 (grouping 18 U.S.C. §§ 1752 (a)(1) and (b)(1)(A) and 1752 (a)(2) and (b)(1)(A) pursuant to U.S.S.G. § 3D1.2(b) because they involved the same victim, Congress); *United States v. Schwartz*, 21-cr-178-1 (APM), Tr. 5/5/2023 at 19-20 (grouping 18 U.S.C. §§ 1512(c)(2), 1752 (a)(1) and (b)(1)(A), and 1752 (a)(2) and (b)(1)(A) pursuant to U.S.S.G. § 3D1.2(b) because they involved the same victim, Congress); *United States v. Alford*, 21-cr-263 (TSC), Tr. 2/2/2023 at 6.[7] Hence, Counts Three and Four are appropriately noted as both having Congress as the victim and grouped accordingly.

Furthermore, Defendant acknowledges that Officer Abdi and the other officers who were impeded on the West Plaza may be victims, but argues that this should be irrelevant to the grouping analysis because Officer Abdi and others were "secondary victims." *See* ECF 92 at 8 ("While Officer Abdi, and the unidentified officer on the lower West Terrace may be considered victims,

---

[7] Notably, the defendant acknowledges in his supplemental briefing that Congress could arguably be the victim of the Section 1512(c)(2) offense, which punishes a defendant who corruptly "obstructs, influences, or impedes any official proceeding." 18 U.S.C. § 1512(c)(2); *see* ECF 92 at 9 ("Mr. Celentano was acquitted of the only count that Congress was arguably part of - obstruction of the electoral college certification.") However, the defendant disputes that Congress could be the victim of the Section 1752(a)(2) count, a lower-level but similarly structured offense that punishes "disorderly or disruptive conduct… [that] impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). It seems most logically consistent that if Congress is the victim of the Section 1512(c)(2) offense here that Congress would also be the victim of the 1752(a)(2) offense here. Additionally, the Section 1752(a)(1) offense essentially punishes trespass on Congressional grounds here (based on the presence of the Vice President, who was at the Capitol in his capacity as President of the Senate on January 6, 2021), making Congress the victim of that offense as well.

it is clear that Officer Ellis was the primary victim in Mr. Celentano's case…"). In support of his position that victims who suffer less substantial attacks should not be considered in the grouping analysis, Defendant points to U.S.S.G. § 3D1.2, comment (n.2). However, when read in its entirety, note 2 makes it clear that there should be different groups for different victims and different societal harms. Here, Defendant could have stopped his criminal conduct after trespassing, he could have stopped after shoving Officer Abdi, he could have stopped after pushing other officers on the West Plaza, he could have stopped after assaulting Officer Ellis. But he did not stop his criminal conduct at any of those points. His criminal acts were separate and distinct, with separate and distinct victims. Therefore, the defendant's multiple criminal acts do not automatically default into one group.

Although the groups above have different victims and so do not further group pursuant to U.S.S.G. § 3D1.2(a) or (b), all of the counts may group into a single group if the enhancements and adjustments applied by the Court permit further grouping under U.S.S.G. § 3D1.2(c), e.g., (1) if the Court applies the cross-reference to U.S.S.G. § 2J1.2 and the official victim adjustment pursuant to 3A1.2(c) to Count Three; or (2) if the Court does not apply the cross-reference to U.S.S.G. § 2J1.2 but does apply the enhancement for a dangerous weapon, pursuant to 2A2.2(b)(2)(C), to Counts Two, Three, and Four. But if the Court does not apply the cross-reference to U.S.S.G. § 2J1.2, or does not apply the enhancement for a dangerous weapon, pursuant to 2A2.2(b)(2)(C), then there is not a single group.

Defendant argues that under any variation there is only one group. This is not accurate. Courts in this District, in the January 6th context, have routinely determined multiple groups are appropriate.[8] Here, there are clearly different victims, as set forth in the groups laid out above, and

---

[8] *United States v. St Cyr*, 22-cr-185 (JDB); *United States v. Anthony Sargent*, 21-cr-639 (DLF);

9

as found by other Courts in this District. *See United States v. St Cyr*, 22-cr-185 (JDB) (Tr. 9/13/2023 at 20); *United States v. Jose Padilla*, 21-cr-214 (JDB) (Tr. 9/13/2023 at 28). Hence, unless the enhancements and adjustments applied by the Court merit grouping pursuant to U.S.S..G § 3D1.2(c), the Guidelines discourage the Court from grouping here, where doing so would fail to recognize the distinct harms to the additional victims, including Officer Abdi and the other officers who were impeded on the West Plaza, and Congress. *See* U.S.S..G § 3D1.2 Commentary (background) ("Counts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d).").

### III. Brandishing a Dangerous Weapon

A three-level upward enhancement pursuant to 2A2.2(b)(2)(C) for brandishing a dangerous weapon is appropriate.[9] As discussed in *McCaughey*, 21-cr-40 (TNM) and *Gillespie*, 22-cr-60 (BAH), a police riot shield, depending how it is used, is a dangerous weapon. Specifically, in *Gillespie*, Judge Howell made the factual determination that the defendant *used* a police shield and applied a four-level enhancement to the guidelines, pursuant to 2A2.2(b)(2)(B). Here, the facts support the government's position that Defendant *brandished* a police shield (*see* ECF 87 at 9-10, 30-31), and therefore is only seeking a three-level enhancement, pursuant to 2A2.2(b)(2)(C).

### IV. Obstruction of Justice

---

*United States v. Jose Padilla*, 21-cr-214 (JDB); *United States v. Rodriguez*, 21-cr-246-1 (ABJ); *United States v. Thomas Smith*, 21-cr-599 (RBW); *United States v. Thomas*, 21-cr-552 (DLF); *United States v. Neely*, 21-cr-642 (JDB); *United States v. Egtvedt*, 21-cr-177 (CRC); *United States v. Phipps*, 21-cr-44 (CJN); *United States v. Blair*, 21-cr-186 (CRC); *United States v. Presley*, 21-cr-257(RDM); *United States v. Adams*, 21-cr-358 (EGS); *United States v. Barnett*, 21-cr-38 (CRC); *United States v. Fitzsimons*, 21-cr-158 (RC); *United States v. Munchel*, 21-cr-118 (RCL); *United States v. Williams*, 21-cr-618 (ABJ); and *United States v. Woods*, 21-cr-476 (APM).

[9] The government incorporates the brandishing a dangerous weapon analysis from the December 1, 2023 proceeding and its first sentencing memorandum. ECF 87 at 30-32.

A two-level upward enhancement pursuant to 3C1.1 for false trial testimony is also warranted.[10] The defendant argues that the video found after the case was submitted to the jury and provided to the court (ECF 87, Sentencing Exhibit 1) does not impact defendant's truthfulness. First, the defendant testified that he could see Officer Ellis using his baton to hit a rioter, but he could not see that very same rioter choking a police officer, and implied Officer Ellis was striking someone for no reason. Sentencing Exhibit 1 confirms that a rioter was actually choking a police officer. The government asserts that if the defendant could see Officer Ellis striking the rioter (which the government does not concede; it is the government's contention that the defendant "sucker-punched" Officer Ellis because he was in a vulnerable position and with no cause), then the defendant was not selectively blind and could see the rioter choking another officer.

Second, that video is just one of many examples of the false statements the defendant made during his testimony. The government set forth nearly a dozen examples of the defendant's false testimony. *See* ECF 87 at 23-25.

### V. Conclusion

The government reiterates its recommendation for a sentence of 135-months' incarceration, three-years' supervised release, $2,000 restitution, and a $300 special assessment.

                                                          Respectfully submitted,
                                                          MATTHEW M. GRAVES
                                                          UNITED STATES ATTORNEY

                                BY:  /s/_____
                                      JACQUELINE SCHESNOL
                                      SHALIN NOHRIA

---

[10] The government incorporates its obstruction of justice analysis from the December 1, 2023 proceeding and its first sentencing memorandum. ECF 87 at 23-25, 28.